————————O————————

No. 6959.

## MORGAN'S LOUISIANA & TEXAS RAILROAD AND STEAMSHIP COMPANY v. A. MARX & SONS.

### Syllabus.

Where demurrage accrues against a shipment in favor of an intermediate carrier by reason of the fault or ne-

glect of the initial carrier alone, the shipper, who had no relationship, contractual or otherwise, with the intermediate carrier, cannot be held personally liable by the latter for such demurrage.

Appeal from the Civil District Court, Parish of Orleans, No. 113,968, Division "D"; Honorable Porter Parker, Judge. Reversed.

Denegre, Leovy, Chaffe & Harry McCall, for plaintiff and appellee.

Merrick, Gensler, Schwartz, for defendant and appellant.

His Honor, EMILE GODCHAUX, rendered the opinion and decree of the Court, as follows:

Defendant herein, conducting business in this city, and desiring to make a shipment of scrap iron or junk from the Texas Oil Company crane at Amesville, in Jefferson Parish, La., requested the Texas & Pacific Railway Company to place two cars at said crane for receiving and transporting said material. At Amesville, La., the tracks of the Texas & Pacific Railway Company and of the Morgan's La. & Texas Railway Co., plaintiff herein, run parallel at a short distance from each other, but the Morgan Railway Co. has and the Texas & Pacific Co. has not a switch or spur track running from its line to the crane of the Texas Oil Company.

Accordingly, upon receipt of said notification from defendant, the Texas & Pacific Company entered into an engagement with the Morgan Railway Co. whereby the latter was to take two Texas & Pacific cars from the Texas & Pacific tracks, haul them to and over the Morgan Railway Co's. spur to the crane of the Texas Oil Company, where

251

they might be loaded by A. Marx & Sons, and then to return the cars to the tracks of the Texas & Pacific Company in order that the latter might transport them to their destination.

In accordance with its engagement, the Morgan Railway Company placed the two Texas & Pacific cars at the Texas Oil Company crane, where they were loaded by A. Marx & Sons' employees; and as soon as this was done, namely, on July 14th, A. Marx & Sons notified the Texas & Pacific Railway Company that the cars were loaded and ready for shipment.

The Texas & Pacific Railway Company, however, neglected to move the cars or to cause them to be moved from the crane, and in fact nothing in respect thereto had been done until on July 21, when A. Marx & Sons received a notice from the Morgan Railway Company stating that there had accrued in its favor and against A. Marx & Sons a charge of $14.00 for seven (7) days' "demurrage", by reason of the failure to move the loaded cars from July 14 to July 21, the term demurrage denoting a charge in the nature of storage which a railroad imposes when by reason of the undue detention of its cars it is deprived of the use of them.

A. Marx & Sons promptly denied liability for the demurrage, claiming that it had fully complied with all its obligations by notifying the Texas & Pacific Railway, with which company alone it had relation, contractual or otherwise, that the cars were loaded and ready for shipment on July 14, and that if demurrage thereafter accrued it was due to the fault or neglect of that company and defendant could not be charged with liability therefor. And in furtherance of their disclaimer of liability, A. Marx & Sons

252

say, and it is a fact, that until this controversy as to demurrage arose they had no knowledge that the Texas & Pacific tracks did not extend to the Texas Oil Company crane, or that the facilities or services of Morgan Railway Company would be required or were in fact used in the premises.

Thereupon a prolonged controversy ensued between the three parties involved, which resulted merely in such inaction that the loaded cars remained at the crane, with demurrage charges piling up at the rate of $2.00 a day, until August 26, when the Morgan Railway Company hauled the cars to its yards in Algiers, discharged and stored the junk, and six months thereafter, namely, on February 26, sold same at public auction for $7.23, to satisfy its claim for demurrage, storage, switching, etc., which by that time had mounted to the aggregate sum of $334.61, thus leaving an alleged balance due it of $327.38, for which it now seeks herein to hold the defendant, A. Marx & Sons, personally liable.

Upon the foregoing, which we find to be the facts of the case, we are of opinion that defendant is not personally liable for the demurrage or for the other charges that thereafter accrued.

Defendant loaded the cars and promptly so advised the Texas & Pacific Railway Company. It was the duty of the latter to then move the shipment and to its breach of duty in this respect is the demurrage charge attributable. Defendant was not in privity with, under no obligation to and could not be expected to notify the Morgan Railroad Company that the cars were ready for shipment, since it had no knowledge that the switches, tracks or services of that railroad were being used or that such use would be re-

quired to enable the Texas & Pacific Railway Company to carry out its undertaking for the entire transportation of the shipment from the Texas Oil Company crane to its destination. The Morgan Railroad Company was the agent, not of defendant, but of the Texas & Pacific Railway Company, and it is to the latter railroad, through the fault of which the loss occurred, that the Morgan Railroad Company must look for redress.

The judgment is accordingly set aside and reversed, and it is now decreed that there be judgment dismissing plaintiff's suit at its cost in both Courts.

Reversed.

Opinion and decree, April 30th, 1917.

Rehearing refused, May 14th, 1917.